This is Ashcroft. And I might add that today's cases are all immigration cases. Are we ready to proceed? Good morning, judges. My name is Emanuel Inouye for Ranjit Kumar. And this case is an appeal of a decision by the BIA, a summary affirmation of a decision of the IJ from 1999. And it was affirmed by a single board member and no opinion was given. So it is a review of the IJ decision. One of those so-called streamlined cases, right? That is correct, Your Honor. And I do believe the legal issue raised by this case has been settled in the Ninth Circuit. And it really involves whether or not the court, which is IJ in this case, can use speculation as a basis of denying an asylum application. In this case, the Ninth Circuit has been very clear on this issue, that if IJ does that, the IJ has to point to clear, specific, congenial reasons for why IJ would find the person incredible. I refer to Shah v. INS, and I also refer the court to Akinmade v. INS. And also I refer to Rasad v. Salam v. INS. These are all Ninth Circuit cases that have been published by the Ninth Circuit. In this case, the respondent was a petitioner in this case, was a 32-year-old person of Hindu descent from India, and he'd been a member of both the political party and religious party in India. I believe the facts of the case are pretty well summarized in the decisions of both the IJ and the opening briefs by both parties. Suffice it is to say that he was oppressed. The political party he's a member of is not uniquely unpopular or an oppressed minority, is it? It is not uniquely unpopular or an oppressed minority. It has been and I think currently is the majority party in the government of India. It is, Your Honor, and he did testify at the time that, in fact, the court did find that his party had been successful in at least one of the elections, but he did not take part in it. Well, at the very least, it's unusual, isn't it, to get a silent claim from a Hindu in India. It is unusual, but it's not unprecedented, Your Honor. And in this case, I think he was troubled by both the authorities and by militants for the Sikh, I believe, Khalistan Liberation Party, that's what it refers to. And he was arrested on three occasions. Actually, he was arrested twice, and then he was kidnapped and tortured the third time, but it was not by authorities. And the first time he was arrested was in 1993, and there had been, I believe, like a bomb blast in Bombay in December of that year, and in January he went to, I believe he was arrested in January, and then he was tortured. And I believe the court found the only consistency in his story was the fact that he indicated in his declaration that he had been treated in a hospital, whereas in his testimony he indicated that he was treated at home. And he was asked about this at the hearing, and he stated that there were two incidents of his being treated. The first time he was treated at home, the second time by a hospital, and it is possible for him to mistake the two. It's a different incident. I mean, a different basis for finding lack of credibility. But I guess the one that I have a problem with, because it just seems to make sense. But why would the authorities suspect a Hindu of cooperating with or assisting the kind of groups that Petitioner testified he was suspected of? It doesn't make too much sense, does it? Well, Your Honor, I believe his father does speak both Hindu and Punjabi, and he does speak both Hindu English and Punjabi himself. So his father, Raj Kumar, I believe they lived in Punjab. And so it is possible that the authorities would suspect there is some sort of cross-allegiance between their family and also the council. Does that seem inconsistent with his claim of being a member and an active member of the BJP? The only thing he can say about the BJP is it stands for keeping the country united, but that's directly inconsistent with the idea that he's somehow assisting the Sikh activists. Well, Your Honor, the issue is not – he did not say he was a Sikh activist. Whether or not somebody could suspect him of being a Sikh activist is something that would be well beyond his control, as far as whether or not he had something to do with being arrested. I do believe – I don't think you would put on him the burden of stating the reason why he was arrested. I think you can – it would be up to him to explain why he believes he was arrested. Your Honor, I would defer to the government for any further help. That's fine. All right. We'll hear from the government. Good morning. May it please the Court. My name is Allison Drucker, and I'm representing the United States. As you're aware, Petitioner is a Hindu. He claims persecution by the police and by Sikh militants because of his religion and his membership in the BJP. Asylum was denied by an administrative asylum officer and by, subsequently, the immigration judge. The immigration judge found the Petitioner's claim of past persecution incredible and also found that he had no well-founded fear of future persecution. Now, in terms of the adverse credibility finding, the Petitioner, of course, carries the burden of proof and the Court reviews under the substantial evidence standard. In making the adverse credibility finding in this case, the immigration judge said that she reached her conclusion on consideration of all the evidence of record, AR-37. And she specifically stated that she considered the June 1996 Department of State report. Her statement was at AR-30. That report is in the record at pages 133 to 150. And with the Court's indulgence, I would like to read just several sentences from that. On page 143, it states, as I believe Judge Clifton mentioned, the BJP won more seats than the Sikh militants. The BJP won more seats than any other party in the 1996 election in India. The report goes on and says, because of its success with the electorate, quote, claims that the BJP cannot function effectively as a party or that the government systematically persecutes BJP members are not credible, unquote. Well, you know, we might I might have some doubts about whether or not it makes sense to to suspect a BJP member of terrorist activities. Fact is, though, there are terrorist activities going on in India. Right. And, you know, maybe there was reason to suspect him. But the issue here, I think, is whether or not the the lack of credibility findings of the IJ are specific, cogent, and really go to the heart of the claim. I have to say it's at least a close question, isn't it? Well, I certainly am prepared to deal with that as well. But as I'm suggesting, the the immigration judge did look at this background material. The State Department report also specifically said that she was considering that in making her finding. And I think the statements in that report are are very informative. The report also deals with Sikh terrorists. It says that the number of Sikh terrorist attacks declined sharply in 1993. There was a virtual elimination of terrorist activities. And then it says, quote, this is page 147. To be credible, an applicant maintaining that Sikh terrorists extorted, threatened and or abused, excuse me, I'm missing some word here, abused him after mid-1993, or would do so if he were to return to India, would have to provide concrete corroborating evidence that the organization had and or now has both the ability and the intent to carry out such action. This would be extremely difficult for most applicants to do, since the few terrorist incidents which have occurred after mid-1993 have been targeted primarily against prominent political leaders, which this person was not. Okay. And also. If I understand correctly, that speaks of terrorist attacks. But the problem we have here is an allegation he suspected of being involved in terrorist activity, which, granted, may seem implausible on its face, but that he's harassed as a result of somebody else's mistaken understanding. And so he doesn't, as I understand it, claim to be harassed because he's a member of the BJP party, and he doesn't claim to be the target of terrorist attacks. He claims to be the target of abuse because he is suspected by authorities of being in cahoots with the terrorists themselves. Right. Right. Well, there's also something that addresses, in this same report at page 162, there's also something that addresses the question of police brutality and how they would treat people who are suspected. This says that as of February 1997, there was a campaign to eliminate police brutality, and lawyers who were volunteers were bringing cases against policemen, and the courts were processing that. So I think my point is just that, you know, there's been a lot of improvement. Some of this started back in 1993 when the BJP became more powerful and ultimately formed a coalition government with the Sikhs. And then I think in this new climate, they were able to cut down on Sikh terrorism and also cut down on police brutality that was a result of the questioning of people, since they were trying to stop the terrorists. However, I do want to continue and address, Judge Tashima, the concerns that you have about the specific findings of the immigration judge. The immigration judge identified a number of problems with Petitioner's evidence which prevent it from compelling belief, which is what it would need to do, since the substantial evidence standard governs adverse credibility issues. There were a lot of different things, but I think there were four main threads here. One was that the immigration judge doubted that Petitioner was politically active. She pointed out that he didn't really know the goals of the BJP. And while there's a letter in the record about his activities in the local BJP in Faguara, the letter does not reflect the fact that, in fact, for about three years, just before coming to the United States, Petitioner did not, in fact, live in Faguara. He was living in another community. And he gave that as the reason for not actually voting himself in the 1996 election. Actually, I think the reason he gave for that was that his sister was ill and he was visiting her in Delhi, if I'm not mistaken. Another point the immigration judge made was that she doubted that – well, she couldn't tell, really. She said if Petitioner was injured, as he claimed, in some of these incidents, because he switched his story around. He said one thing in the declaration, then he said one thing during direct testimony, and then something else again during cross-examination. Also, the immigration judge found three of the four incidents that he pointed to implausible. These incidents, let's see, one was that he was beaten on his way home. This was in 1992, beaten allegedly by Sikh militants coming home from a rally. And her point was there were 1,000 people at the rally. He wasn't a local leader. He wasn't a speaker at the rally. Why would he be singled out? Then skipping the second one, the third incident was an arrest in 1995. I think, Your Honors, you've already pointed out that you have some problems with this. He said that he was – supposedly he was suspected of connections with Sikh terrorists and had some sort of knowledge about who assassinated the minister of the Punjab. And the immigration judge found that implausible, since how would he – why would anybody suspect him of such connections? He was, if anything, would have been an opponent of their goals. And also the fourth incident where he was beaten by Sikh terrorists for turning some of them into the police. Again, that all seemed implausible because he said that he had learned of this activity. It was happening. They were plotting down the street from his family in Faguara. But again, as I pointed out, he hadn't even been living in Faguara for some time. So that didn't sit too well with the immigration judge either. She also questioned Petitioner's subjective fear insofar as the timing of when he obtained his passport. I think initially he suggested that it was after the fourth incident in November of 1996 that he obtained his passport. But, in fact, it came out in the testimony that he had obtained it several months before that. So he was getting it a year after Incident 3 but before Incident 4. So if he felt terror, he certainly wasn't reacting in any quick way to that fear. As I said, the immigration judge also found reasons for a finding of no well-founded fear in the future. The changes in country conditions that I've already alluded to in the State Department report, the fact he had no trouble while he was visiting his sister in Delhi, as Judge Clifton, we've just discussed, and also the fact he got these letters from his father, who apparently is still living in Punjab, and his father didn't report that he was having any problems even though he is Hindu and a strong supporter of the BJP. I conclude. All right. Thank you, Ms. Drucker. Rebuttal? Your Honor, I did notice that the government did raise the issue of the country condition report. I just want to point out to the Court that the judge did not make any reference whatsoever to the country condition report in the judge's decision. In fact, the judge based all of the credibility findings on her own assumptions and her own recollection. In fact, I'm quoting here from, this is a nine-separate decision in Rasad Deepo Salam v. INS, and it's 222F3-1234, 9th Circuit, 1998. The Court wrote the following. The BIA's adverse credibility finding is not supported by substantial evidence. The BIA's statement that it was not plausible that Salam was a leading member of FNM at age 18 is based entirely on unsupported assumption. The BIA seems to believe that important organizations do not have young leaders, and according to the 9th Circuit, the BIA's only other reason for questioning the truthfulness of his claim was the impossibility of Salam's testimony that he continued to include his name on flyers. So, again, the BIA's finding is not supported. It's not supported assumption that faces significant evidence. In this case, the Court went to quite great pains to find just about all parts of the respondent's testimony plausible. In fact, the Court found it difficult to believe that he was an active member of the BJP. The Court found it difficult to believe that he was in a party but didn't engage in the election in 1996. The Court found it difficult to believe that he was a member of the party but did not have a membership card. The Court found it difficult to believe that he would know anything about the Hindu ‑‑ excuse me, about the Palestinian terrorists. In fact, the Court found it difficult to believe any other story without saying any reason why the Court found it difficult to believe. In the decision, the Court made no reference to any particular things he said that the Court found difficult to believe. It's just that the Court found his decision, his ‑‑ Well, is the judge required to accept everything a petitioner says or an applicant says unless there is explicit, extrinsic evidence or contradiction? I mean, if somebody came in and said, I've invented a machine that can defy gravity, and the authorities back in my home country didn't like me for breaking laws of physics so beat me up, does the immigration judge have to accept that at face value? Well, Your Honor, that is why they have a de novo hearing. What the immigration judge will do is try and ask questions whether or not there's any other evidence to contradict what he said. Well, let's take the example I offered, something that I'm not going to believe and the immigration judge shouldn't believe, but there is no extrinsic evidence to disprove that. Nobody can really prove the person didn't invent an anti‑gravity machine. Is the immigration judge required to leave common sense at the door if there's not specific evidence to contradict it? In fact, the immigration judge is not required to do that, Your Honor. However, when there is other evidence to show, I believe in this case he had letters from India indicating he's a member of the party. Okay, he says he's a member of the party, except by his own testimony he wasn't in that community for the two years and he didn't vote in the 96th election, and all he can say about the party's aims is that it wanted to keep the party together. Now, on its face, that says to me this isn't a person who's a political activist and knows what's going on because he would have voted and he would have known something more about the party than he did. Isn't that an appropriate thing for the immigration judge to do? It would be an appropriate assumption, Your Honor. However, it does open the door for the I.J. to simply discount all the evidence in the record and simply say it does not make sense to me. In fact, it is very significant that the Court indicated that her recollection of the event in 1992, and the Court made no reference to any facts or anything, simply said my recollection of the event was something entirely different from his testimony. And if we allow the I.J. to do that, then I.J. could simply use her personal experience or his personal experience as a basis for making findings in court. It is a very dangerous precedent to allow, Your Honor. But if you accept your client's claim that he's a member of the BJP, and the BJP is now the majority party, that's not a matter of speculation. It is the fact on the ground in India at this time. What's the reasonable fear of persecution? What's the source of that fear, given the changed circumstances in that country? Well, Your Honor, I'll refer to hypothetical. If somebody accused me today of being a member of a terrorist organization and arrested me and tortured me and put me in jail for five years, I can maintain my innocence for as long as I want to. The fact that my being arrested, my being tortured does not change based on the fact that eventually I'm found to not be a terrorist. I think what the Ninth Circuit has done is state that if there is no evidence, in fact, if there's credible evidence in the record, and that goes for his testimony or any other evidence that admits that in fact what he did say happened, then there has to be reason in the record for the court to doubt that. I do understand it does open the door for some stories that may not seem plausible to everybody, but I think that as far as the law stands in the Ninth Circuit, it is not the court's position to substitute the court's own assumptions or beliefs or feelings for evidence in the record. I do believe it is simply the way the law stands in the Ninth Circuit. Okay. Thank you. Is that it? All right. Thank you. We thank both counsel. This case is now submitted for decision. Next case for argument is Nila, Taran Jit Singh Nila v. Ashcroft.
judges: Tashima, Clifton, Leighton